IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. GOFF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LISA M. GOFF, APPELLANT.

Filed March 28, 2017.    No. A-16-644.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Janice I. Reeves, of Truell, Murray & Associates, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

INBODY, Judge.

## I. INTRODUCTION

Lisa M. Goff appeals her conviction for negligent child abuse (a Class I misdemeanor) claiming there was insufficient evidence to support the guilty verdict by the jury. Goff also contends she was not afforded effective assistance of counsel at trial.

## II. STATEMENT OF FACTS

Goff was charged by information with committing one count of child abuse, a Class IIIA felony. Goff pled not guilty to the charge and the case proceeded to a jury trial. Goff is the mother of the alleged victim of the abuse, Jonathan F. At the time of the alleged offense, Jonathan was age 5.

Mark F., Jonathan's father, testified at trial. Mark testified he has Jonathan full-time and that Goff has weekday visits with Jonathan on Wednesday and every other weekend. Mark stated that in October 2015, Jonathan went to Goff's home for her parenting time. The day after Jonathan

returned to Mark from Goff's visitation, Mark was bathing Jonathan and noticed a "round spot that was red" with a "scab around the edge" and a "moist" center, about a quarter inch across, on Jonathan's right arm about two inches below his shoulder. Mark testified that prior to going to Goff's home, Jonathan did not have any burn marks. Mark stated that the following day he went to the Department of Health and Human Services (DHHS) to talk about the mark on Jonathan's arm and that they explained the process to him. Mark called the Grand Island Police Department and a law enforcement officer came to his home. Mark indicated that the following day, another law enforcement officer came to his home with a DHHS representative, and several days later, a detective and an individual from Child Protective Services came to his home. Mark stated that neither he, nor law enforcement, ever took Jonathan to a doctor, nurse, or medical professional as a result of the burn.

Grand Island Police Department Officer Richard Roy also testified at trial. Officer Roy testified that he had contact with Mark and Jonathan as a result of a report for child abuse. Officer Roy stated that he observed a "round, reddish mark on [Jonathan's] right bicep area." Officer Roy indicated that he took photographs of the mark and the photographs were shown to the jury. Officer Roy stated that Jonathan told him how he got the mark on his arm, and that following his contact with Mark and Jonathan, he wrote his report and referred the case to the Criminal Investigations Division (CID). As a result, Grand Island Police Department Investigator Sarah Mann took the case. Officer Roy also indicated that the mark was not examined by a medical professional.

Investigator Mann testified at trial. Investigator Mann indicated she is a child abuse investigator and a member of the CID. Investigator Mann testified that she was assigned to investigate reports of child abuse towards Jonathan. Investigator Mann stated she was able to go to Mark's home to speak with Mark and Jonathan. Investigator Mann stated she observed a "round, circular . . . burn mark" that was "fairly healed" on Jonathan's right arm, "just under his sleeve area." Investigator Mann stated that she took photographs of the mark and the photographs were shown to the jury. Investigator Mann stated that when she inquired about the burn, Jonathan told her what happened. Investigator Mann testified that she received training regarding burn injuries, but not specific training relating to burns caused by cigarettes. Investigator Mann affirmed that, as a police officer, she had occasion to witness or observe burns caused by cigarettes and that cigarette burns are distinct because of the size, shape, and the edging around the burn. Investigator Mann also stated that the mark was not examined by a medical professional because, at that point, the mark was "too healed".

At trial, the State asked Jonathan a series of questions about speaking with law enforcement and about the burn on his arm. Jonathan stated he was burned from hot water from the stove splattering on his arm, pointing to a spot on his forearm. Jonathan also affirmed he was burned by grease from a skillet or a pan on the stove, pointing to the top of his right wrist. Jonathan additionally stated he got an "owie" that was "shaped like a turtle" from tripping on his wagon and falling on a toy house. Later, Jonathan affirmed that he talked to a police officer about the burn mark on his arm and under his sleeve that looked like a turtle. The State asked Jonathan if it was true that he "told the police officer that [he] got [the] burn because [his] mommy used a cigarette on [his] arm," to which Jonathan responded "[y]eah, it's true." The State asked follow-up questions to find out if what Jonathan told law enforcement was what actually happened. Specifically, the

State asked Jonathan "Is that how you got your burn that looked like a turtle shell?" and "So what you told the police officer about your mom putting a cigarette on your arm, that is how you got your burn?" In response to each question, Jonathan said "yeah".

Kendra Maxwell, Goff's daughter, testified at trial, stating that she saw the burn mark on Jonathan's arm the first night he stayed with Goff in October 2015. Kendra testified she did not see Goff burn Jonathan with a cigarette. Kendra stated that Jonathan told her that the burn resulted from Mark burning him with a skillet.

Goff testified at trial, stating that it is her rule to not smoke inside her house, but only outside "completely away" from her children. Goff indicated that she would never have occasion during Jonathan's visits to be in possession of a cigarette when he was near her. Goff stated that she was never alone with Jonathan in October 2015 during visitation, and denied touching or burning her son with a cigarette. Goff stated that she first observed the mark on Jonathan's shoulder the night Kendra showed her. Goff stated she did not call the police or take Jonathan to a doctor because it was almost healed.

During closing arguments, the State stated that it hoped the jury was "paying attention to when Investigator Mann told [them] about the cigarette burns she has witnessed over the course of her career and the training she has received about cigarette burns." Goff's attorney at trial did not object to the statement.

At the conclusion of the evidence, the jury was instructed on the essential elements of the offense for intentional child abuse, as well as the essential elements of the lesser offense of negligent child abuse. The jury found Goff guilty of one count of negligent child abuse. Goff was sentenced to serve 18 months of probation, with a period of 70 days of incarceration to begin immediately and a further term of 20 days of incarceration to be served later in the period of probation.

## III. ASSIGNMENTS OF ERROR

On appeal, Goff's assignments of error, consolidated and restated, are that the evidence was insufficient to support the conviction and that her counsel was ineffective for failing to: consult or present an expert witness regarding Jonathan's injury; object to the State's closing argument regarding Investigator Mann's training; and interview or call certain witnesses.

## IV. STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set

aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016).

## V. ANALYSIS

### 1. CHILD ABUSE CONVICTION

Goff argues that there was reasonable doubt existing based on the conflicts in testimony, evidence, and inferences at trial. Moreover, Goff contends that the State's case was "weak" and "supported only by hearsay and speculation and without the support of any scientific or medical evidence." Brief of appellant at 12. Goff remarked on the various explanations provided by Jonathan regarding the marks and burns on his arm.

Neb. Rev. Stat. § 28-707(1)(Cum. Supp. 2014) provides:

A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

> (a) Placed in a situation that endangers his or her life or physical or mental health;
> (b) Cruelly confined or cruelly punished[.]

The testimony at trial indicates that following Goff's visitation with Jonathan, Mark noticed a red, round spot with a scab around the edge and a moist center on Jonathan's right arm about two inches below his shoulder. Mark indicated that prior to going to Goff's home, Jonathan did not have any burn marks. As a result of Mark's report to the Grand Island Police Department, Officer Roy and Investigator Mann spoke with Mark and Jonathan. Specifically, Officer Roy stated that he also observed a round, reddish mark on Jonathan's right bicep, that Jonathan told him how he got the mark, and that it caused him to refer the case to the CID. Investigator Mann from the CID testified that she observed a round, circular burn mark that was fairly healed on Jonathan's right arm just under his sleeve area and that when she inquired about the burn, Jonathan told her what happened. Investigator Mann testified that she received training regarding burn injuries and affirmed that as a police officer, she had occasion to witness or observe burns caused by cigarettes. Moreover, at trial when the State asked Jonathan if he told law enforcement that he got the burn because Goff used a cigarette on his arm, Jonathan said "yeah" and "it's true." Moreover, in asking follow-up questions about whether Jonathan got his burn from Goff putting a cigarette on his arm, Jonathan said "yeah."

Despite hearing conflicting evidence and inconsistencies in the testimonies, the jury heard the entirety of the State's testimony and chose to believe the State's witnesses. Upon our review of the record, the evidence at trial does not lack sufficient probative force beyond a reasonable doubt to set aside the guilty verdict. See *State v. Epp, supra*. Viewing the evidence most favorably to the State, as we are required to do, we find there was sufficient evidence at trial to support the conviction for negligent child abuse.

## 2. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that the deficient performance actually prejudiced his or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). To show prejudice under the prejudice component of the *Strickland* test, the appellant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceedings would have been different. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

As Goff has different counsel in this appeal from trial counsel, she must raise any ineffective assistant of trial counsel issue known to her, or which is apparent from the record, or the issue will be procedurally barred on postconviction review. See *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). The determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

### (a) Counsel Failing to Present Expert Witness

Goff contends that her counsel was ineffective for failing to consult or present expert witness testimony regarding the nature and age of Jonathan's injury. The record is insufficient for us to determine whether her counsel consulted an expert witness regarding Jonathan's injury. We therefore conclude that this claim cannot be adequately reviewed in this direct appeal.

### (b) Counsel Failing to Object to State's Closing Argument

Goff additionally contends her counsel was ineffective for failing to object to the State's closing argument statement that Investigator Mann received training about cigarette burns.

In its closing argument, the State said that it hoped the jury was "paying attention to when Investigator Mann told [them] about the cigarette burns she has witnessed over the course of her career and the training she has received about cigarette burns." Investigator Mann testified that she had received training regarding burn injuries, but not specific training relating to burns caused by cigarettes, and that as a police officer she had occasion to witness or observe burns caused by cigarettes.

The record is insufficient for us to determine whether counsel's failure to object to these statements was part of trial strategy. Therefore, we conclude that this claim cannot be adequately reviewed in this direct appeal.

### (c) Counsel Failing to Call Certain Witness

Goff also contends that her counsel was ineffective by failing to interview or call Herman Suazo or one of the teachers at Jonathan's preschool, Tiffany. Goff contends Herman "would have testified that he heard Mark [] threaten . . . Jonathan[] to tell the police that he received the burn from his mother, or else." Brief of appellant at 17. Further, Goff claims that Tiffany would have

testified seeing Jonathan's upper arm injury the day before his weekend visitation. Goff contends she provided contact information to her trial counsel for both witnesses.

As the record is insufficient for us to determine whether her counsel contacted these witnesses, we conclude that this claim cannot be adequately reviewed in this direct appeal.

## VI. CONCLUSION

We reject Goff's claim that there was insufficient evidence to support her conviction. However, we conclude the record is insufficient for us to determine the remaining claims for ineffective assistance of counsel.

AFFIRMED.